LEOPOLD KNUPFLE, as ADMINISTRATOR, &c. of JACOB KNUPFLE, DECEASED, RESPONDENT, v. THE KNICKERBOCKER ICE COMPANY, APPELLANT.

*Negligence—when the question as to the contributory negligence of a child is to be passed upon by the jury—admissibility in evidence of a city ordinance rendering an act complained of, illegal.*

On the morning of November 10, 1879, one of the defendant's employees drove an ice wagon belonging to it in front of a house in Atlantic avenue, Brooklyn, delivered some ice there, and then went into an adjoining store to see about buying a bird for himself, leaving the horses untied and unattended. While he was in the store, the intestate, a boy about five years old, was drawn along the sidewalk, in a little wagon, by a boy of about his own age, who, when he came opposite to the cart, let go of the tongue of the wagon, whereby the deceased was thrown behind the feet of the mules, who started off, drawing the hind wheels of the cart over his body, occasioning injuries from which he died.

In an action to recover damages for his negligent killing,—*Held*, that the evidence was sufficient to sustain a verdict in favor of the plaintiff.

Upon the trial the plaintiff was allowed, against the defendant's objection

and exception, to introduce in evidence an ordinance of the city of Brooklyn, making it unlawful for a team to stand in the street without a person in charge or without being secured to a tying post.
*Held*, no error.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury, and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

The action was brought to recover damages resulting from the death of Jacob Knupfle, the plaintiff's intestate, through the alleged negligence of the defendants. Edward McDonald was in the employment of the defendants, as driver of an ice wagon, in the city of Brooklyn. His duties were to get up his team in the morning, go to the defendant's depot, get a load of ice, take it to his route, serve it, and then go back and wait for further orders. On the morning of November 10, 1879, he left the defendant's depot, at Fulton Ferry, with a wagon partially loaded with ice, drawn by a span of mules, and went over his route serving this ice until he reached a point on Atlantic avenue, near Nevins street, where he had a customer. He finished what he had to do at this place, and then drove to No. 412 Atlantic avenue, where he had another customer. As he drove up in front of No. 412, he stopped his mules, drew them back so that the traces were slack, tied the reins fast to a post on the wagon back of the seat, in such a manner that the mules could not go ahead, except they drew the wagon and load by the bits. He then went into No. 412, ascertained what ice was wanted there, served it, and then went back to and put his tongs upon the wagon. He then left his mules and wagon in the same position, and went next door (No. 410) to see about a bird for himself, without the knowledge or authority of the defendants. He stood about a foot and a half within this store, where he could see his mules, and distant from them the width of the sidewalk. He had been standing in that position three or four minutes when George Weidig, a boy five years of age, came running down the sidewalk in the same direction that the mules were headed, drawing a toy wagon, in which the deceased, who was also five years of age, was seated. As the boy Weidig got opposite the

ice wagon, he let the tongue of the little wagon drop on the side-walk, and its momentum carried it off the sidewalk, between the front wheels of the ice wagon and the mules, and up against their heels. This made the mules restive. They started ahead, and the hind wheel of the wagon passed over the deceased and injured him so that he died shortly afterwards.

*Maclay & Mudge,* for the appellant.

*William G. Cooke,* for the respondent.

BARNARD, P. J.:

The evidence of negligence upon the part of defendant's driver is sufficient to sustain the verdict. A team of mules attached to a heavy ice wagon, was left untied and unattended in the street of the city of Brooklyn. The driver was engaged in the delivery of ice for defendant, but had for the moment entered a house to see about a bird for himself. This deviation did not release the company from the act of leaving the mules untied and unattended. They were so left while the driver was engaged in his proper business. No contributory negligence was as matter of law attributable to the deceased child. It was a question for the jury, under proper instructions from the court. The evidence tended to show that while the mules were standing in the street, the deceased, a boy of four or five years of age, was in a small wagon being drawn by a boy of about his own age, on the sidewalk. The wagon with deceased ran under the wagon of defendant, between the mules and the forward wheels of the ice wagon. The mules started and run over the boy in the small wagon and killed him. The jury were told by the judge that the children had "no right to play in the middle of the street, or thrust themselves under the feet of horses. Therefore, if this accident was caused in your judgment by this child being thrust against the heels of the mules, then, although he was not guilty of any negligence, it will relieve the defendants from the imputation of having caused the accident by their negligence." This was quite as favorable to the defendants as they were legally entitled to have charged.

It is very certain that, if a person had been present, or if the

mules had been tied no accident would have happened. The mules did not run away. The children had the right to be in the street. They have not the capacity to protect themselves like persons of mature judgment, and the defendant was bound to furnish proper care and prudence for their protection.

There is no force in the exception to the admission of the city ordinance, requiring all teams to be securely tied or to have a person in charge. Such evidence is always admissible on the question of negligence.

The court charged the jury that "the ordinance adds very little to what would have been the rule without it; namely, that it is negligence to leave a horse untied or not in charge of some one, in the public street. Whether there is an ordinance or not, the question, as I have said, is, whether these mules were left in such a way."

Judgment should be affirmed, with costs.

DYKMAN, J., concurred; GILBERT, J., not sitting.

Judgment and order denying new trial affirmed, with costs.